**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANDREW JOSEPH WORKMAN,

    Defendant - Appellant.

No. 16-1495
(D.C. No. 1:15-CR-00397-RBJ-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

Andrew Joseph Workman challenges the denial of his motion for release pending the government's appeal of the district court's order suppressing the evidence against him. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c), we affirm the district court's order.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I

A federal grand jury returned an indictment against Mr. Workman, charging him with both receipt and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(2) & (a)(5)(B).

The magistrate judge conducted a detention hearing. He noted the rebuttable presumption of detention applies to Mr. Workman's charges. The magistrate judge then found that Mr. Workman presented a risk of nonappearance in light of the nature of the charges, his "lack of contacts to the community, his current living situation (having been asked to leave his apartment by his roommate), and the information from the file concerning suicidal ideation." Supp. App. at 3. He concluded no combination of conditions could reasonably assure Mr. Workman's appearance, "especially in light of the presumption of detention in this case." *Id*.

Mr. Workman later moved to suppress all the evidence against him on Fourth Amendment grounds. The district court granted the motion and the government appealed that determination to this court in Appeal No. 16-1401. Mr. Workman sought release pending the government's appeal, arguing the magistrate judge's findings supporting detention were no longer valid. Specifically, he contended that, "[b]ecause the evidence in this case is suppressed, the presumption [of detention] has shifted back in favor of release." App. at 26–27 (emphasis omitted). Mr. Workman also noted the strength of the evidence against him had been undermined and maintained that specific release conditions, such as residence at a halfway house, would mitigate the magistrate judge's concerns that he was a flight risk. With regard

2

to suicidal ideation, he argued that any concern over his mental health would be "properly addressed by a condition of release mandating mental health treatment and medication." App. at 28.

The district court denied the motion, holding that the factors the magistrate judge relied upon had not changed. In so holding, the court noted:

> I accept that placement in a halfway house with mental health treatment would provide Mr. Workman a place to live and would potentially reduce the risk of flight. However, it would not eliminate the latter risk, nor would it eliminate Judge Hegarty's concern about suicidal ideation. The Court was informed by government counsel that Mr. Workman has attempted suicide twice.

App. at 47. The court found that the suppression of evidence was the only change, but concluded under an unpublished decision of this court that "it is not improper for the district court to consider the suppressed evidence in evaluating the weight of the evidence for detention purposes while the appeal is pending." App. at 47 (citing *United States v. Pina-Aboite*, 97 F. App'x 832, 835 (10th Cir. 2004) (per curiam)). The court noted that courts are split over the constitutionality of the nationwide warrant at issue in this case.

## II

We review the district court's ultimate pretrial detention decision de novo because it presents mixed questions of law and fact; however, we review the underlying findings of fact for clear error. *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with

3

the definite and firm conviction that a mistake has been committed." *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted). We review the district court's findings with significant deference, cognizant that "our role is not to re-weigh the evidence." *Id*. at 515–16.

Where the government takes an appeal from a suppression order, we generally treat the defendant as we would a pretrial defendant. 18 U.S.C. § 3143(c). The Bail Reform Act sets out the framework for evaluating whether pretrial detention is appropriate. *See id*. § 3142. The charges against Mr. Workman establish a rebuttable presumption "that no condition or combination of conditions will reasonably assure [his appearance] as required and the safety of the community." *Id*. § 3142(e)(3)(E). Mr. Workman bears the burden of producing some evidence to rebut the presumption. *See United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991) (per curiam). At the same time, "the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *Id*. at 1354–55.

Mr. Workman presents three arguments in support of his release.[1] First, he contends the district court committed legal error by asking whether conditions of release would "eliminate" the risk of flight instead of following § 3142(e), which merely asks whether conditions of release would "reasonably assure" appearance.

_____

[1] Mr. Workman argued before the district court that the suppression order resulted in a presumption in favor of his release, thus changing the rebuttable presumption found in § 3142(e)(3)(E). On appeal, he notes in a footnote that, though he maintains this argument, the "issue does not appear to be material to this appeal." Mem. Br. at 7. We consider this argument abandoned. *See United States v. Seminole Nation of Okla*., 321 F.3d 939, 946 n.5 (10th Cir. 2002) (refusing to consider an issue a party did not brief on appeal).

Opening Br. at 5 (emphasis omitted). Mr. Workman next insists that it is improper to consider his past suicide attempts when deciding whether he is a flight risk. Finally, he argues weight of the evidence is no longer helpful in deciding whether he will appear because it hinges solely on the government's success on appeal.

We cannot find fault with the district court's determination that the government met its burden or the manner in which the court reached its decision. While the court discussed whether the magistrate judge's original concerns had been eliminated, it did so in the context of an overarching point — that Mr. Workman's situation had not changed. Indeed, the court expressly noted that the suppression of evidence is the only thing that changed. Mr. Workman is therefore mistaken about whether the district court complied with § 3142. We conclude the district court did not commit legal error.

We also do not fault the district court for considering Mr. Workman's past suicide attempts. Though he may well be correct that "[t]here is no indication Congress was concerned with a defendant's risk of suicide when crafting" the § 3142 factors, Opening Br. at 8, Congress was certainly concerned with a defendant's risk of nonappearance. Though such a risk is normally conceived in terms of a defendant's willful flight of the charges against him, suicide is, technically speaking, one way that Mr. Workman could not appear in court. *See United States v. Cody*, 498 F.3d 582, 591 (6th Cir. 2007) (recognizing that it is "logical" to extend rules that "treat suicide as a form of flight"). The district court is thus within its discretion to consider suicidal ideation and previous suicide attempts in determining whether it

5

can reasonably assure Mr. Workman's appearance. To be sure, we might view the question differently if the district court considered *only* Mr. Workman's suicidal ideation, but it also considered "Mr. Workman's lack of contacts with the community [and] the fact that he does not have a non-custodial place to live." App. at 47. It is far from certain that Mr. Workman's placement in a halfway house with mental health treatment would sufficiently mitigate his risk of flight by suicide. In any event, the district court's finding on this issue is factual. Deferring to such findings as we must, our review of the entire record does not leave us "with the definite and firm conviction that a mistake has been committed." *Gilgert*, 314 F.3d at 515 (internal quotation marks omitted). We therefore see no basis to overturn the district court.

Mr. Workman also argues that the district court erred in weighing the evidence once the court granted the motion to suppress. But the district court was entitled to balance the evidence as it did. Though we might have weighed the evidence differently, the district court did not clearly err in its balancing of the evidence.

### III

Mr. Workman produced no evidence supporting his release; he rested the bulk of his argument on the district court's suppression order. We are satisfied that the district court carefully considered the parties' positions presented in conjunction with the relevant statutory factors and the detention presumption, and it made the required

findings to support its pretrial detention order.  We affirm.

Entered for the Court
Per Curiam